## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MONIQUE SANDERS, DARLA SOICH, and CHRISTOPHER HARRISON, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 1:22-cv-00591-TNM |
| v. | |
| IBEX GLOBAL SOLUTIONS, INC., and IBEX LIMITED, | |
| Defendants. | |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
## <u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND........................................... 2

III.    THE SETTLEMENT AGREEMENT ............................................................. 4

        A.      Definition of the Class ..................................................................... 4

        B.      The Settlement Terms and Benefits to the Settlement Class .................... 4

                1.      The Non-Reversionary Settlement Fund ........................................ 4

                2.      Identity Theft Protection and Credit Monitoring Package ............. 5

                3.      Reimbursement for Lost Time .................................................... 5

                4.      Reimbursement for Out-of-Pocket Losses ................................... 6

                5.      Cash Payments for Identity Theft or Data Misuse ........................ 6

                6.      Distribution of Benefits to Settlement ....................................... 6

                7.      Confirmatory Discovery ........................................................... 7

                8.      Notice ................................................................................... 8

                9.      Attorney's Fees, Expenses, and Service Awards ........................ 8

IV.     THE PROPOSED SETTLEMENT WARRANTS PRELIMNARY APPROVAL ...... 9

        A.      Standards for Preliminary Approval ................................................... 9

        B.      The Settlement is Fair, Reasonable and Adequate................................ 10

                1.      The Class Representatives and Class Counsel Have Adequately
                        Represented the Class ............................................................. 11

                2.      The Settlement is the Product of Informed, Arm's-Length Negotiations........ 12

                3.      The Settlement Relief Provided to Class Members is Highly Favorable,
                        Particularly Given the Costs, Risks, and Delays of Further Litigation............ 13

                4.      The Settlement Agreement Treats Class Members Equitably Relative to
                        Each Other ............................................................................ 16

                5.      The Plaintiffs and Class Counsel Support the Settlement .............. 17

V.      THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS. ................... 18

        A.      Federal Rule of Civil Procedure 23(a) Criteria is Met........................... 18

                1.      The Class Members are too Numerous for their Claims to be Feasibly
                        Joined… ............................................................................... 18

                2.      The Data Incident and Its Consequences are Common Issues that Apply
                        to All Class Members............................................................... 18

3.    Plaintiffs' Claims are Typical of the Class ...................................... 19

4.    Plaintiffs and Class Counsel are Adequate Representatives........................... 19

B.    Federal Rule of Civil Procedure 23(b) Is Met ....................................... 20

VI.   THE NOTICE AND NOTICE PROGRAM WILL PROVIDE CLASS MEMBERS
      THE BEST NOTICE PRACTICABLE UNDER THE CIRCUMSTANCES AND
      SHOULD BE APPROVED BY THIS COURT ................................................ 21

## TABLE OF AUTHORITIES

**<u>Cases</u>**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................................. 18

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000) ...................................................................................... 20

*Blackman v. District of Columbia*,
    454 F. Supp. 2d 1 (D.D.C. 2006) ..................................................................... 12, 13

*Brown v. District of Columbia*,
    928 F.3d 1070 (D.C. Cir. 2019) ............................................................................. 18

*Brown v. District of Columbia*,
    No. CIV. A. 91-0132, 1991 WL 255458 (D.D.C. Nov. 15, 1991) ............................ 21

*Bynum v. D.C.*,
    412 F. Supp. 2d 73 (D.D.C. 2006) ........................................................................... 8

*Cobell v. Jewell*,
    802 F.3d 12 (D.C. Cir. 2015) .................................................................................... 8

*Cohen v. Chilcott*,
    522 F.Supp.2d 105 (D.D.C. 2007) ......................................................................... 18

*Coleman v. District of Columbia*,
    306 F.R.D. 68 (D.D.C. 2015) ................................................................................. 21

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ................................................................................................. 18

*Dew v. Mindfinders, Inc.*,
    No. CV 20-2930 (BAH), 2021 WL 4797551 (D.D.C. Oct. 14, 2021) ........................ 13

*Gordon v. Chipotle Mexican Grill, Inc.*,
    No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) .............. 14

*Hardy v. District of Columbia*,
    283 F.R.D. 20 (D.D.C. 2012) ........................................................................... 19, 20

\* *Howard v. Liquidity Servs. Inc.*,
    No. CV 14-1183 (BAH), 2018 WL 4853898 (D.D.C. Oct. 5, 2018) .................... 13, 17

*Hoyte v. District of Columbia*,
  325 F.R.D. 485 (D.D.C. 2017) ........................................................................ 18

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................. 8

*In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*,
  271 F. App'x 41 (2d Cir. 2008) ...................................................................... 22

*In re Brinker Data Incident Litig.*,
  No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) ............................. 19

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
  No. 3:08-MD-01998, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ................................... 14

*In re District of Columbia*,
  792 F.3d 96 (D.C. Cir. 2015) ......................................................................... 19

*In re Domestic Airline Travel Antitrust Litig.*,
  322 F. Supp. 3d 10 (D.D.C. 2018) .................................................................... 22

*In re Domestic Airline Travel Antitrust Litig.*,
  378 F. Supp. 3d ...................................................................................... 14

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
  999 F.3d 1247 (11th Cir. 2021) ...................................................................... 20

*In re Fed. Nat'l Mortg. Ass'n Sec., Deriv. & "ERISA" Litig.*,
  4 F. Supp. 3d 94 (D.D.C. 2013) ...................................................................... 14

*In re GMC Truck Fuel Tank Prods. Litig.*,
  55 F.3d 768 (3d Cir. 1995) .......................................................................... 14

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  327 F.R.D. 483 (S.D.N.Y. 2018) ..................................................................... 14

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  No. 99MS276(TFH), 2003 WL 22037741 (D.D.C. June 16, 2003) ................................... 8

*In re New Jersey Tax Sales Certificates Antitrust Litig.*,
  750 F. App'x 73 (3d Cir. 2018) ...................................................................... 14

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
  No. 3:15-MD- 2633-SI, 2019 WL 3410382 (D. Or. July 29, 2019) .............................. 15

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
  No. 1:14-MD-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) .......................... 15

\* *Kinard v. E. Capitol Fam. Rental, L.P.*,
  331 F.R.D. 206 (D.D.C. 2019) .......................................................................................... 8, 9, 12

*Koenig v. Lime Crime, Inc.*,
  No. CV 16-503 PSG (JEMx), 2018 WL 11358228 (C.D. Cal. Apr. 2, 2018) ............................ 14

*Luevano v. Campbell*,
  93 F.R.D. 68 (D.D.C. 1981) ...................................................................................................... 14

*Osher v. SCA Realty I, Inc.*,
  945 F. Supp. 298 (D.D.C. 1996) ........................................................................................... 9, 12

*Prince v. Aramark Corp.*,
  257 F. Supp. 3d 20 (D.D.C. 2017) ........................................................................................... 17

*Stewart v. Rubin*,
  948 F. Supp. 1077 (D.D.C. 1996) ............................................................................................ 17

*Thomas v. Albright*,
  139 F.3d 227 (D.C. Cir. 1998) ................................................................................................... 9

*Trombley v. Nat'l City Bank*,
  759 F. Supp. 2d 20 (D.D.C. 2011) ...................................................................................... 10, 12

*Twelve John Does v. District of Columbia*,
  117 F.3d 571 (D.C.Cir.1997) .............................................................................................. 11, 20

## Rules

\* Fed. R. Civ. P. 23 ................................................................................................................ *passim*

## Other Authorities

*Manual for Complex Litigation, Fourth* § 21.632 (2004) ................................................................. 10

Wright & Miller, *Federal Practice & Procedure* § 1778 ................................................................. 21

Plaintiff Monique Sanders, Plaintiff Darla Soich, and Plaintiff Christopher Harrison (collectively, "Plaintiffs"), individually and on behalf of the putative class, (collectively, "Plaintiffs"), submit this memorandum of law in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Motion").

## I.    <u>INTRODUCTION</u>

On August 17, 2020, Defendant Ibex Global Solutions, Inc., and Defendant Ibex Limited (collectively, "Defendants" or "Ibex") discovered a malware attack had been launched on its systems.  *See* ECF No. 1, Class Action Complaint ("Pls.' Compl."), ¶ 4.  Through an investigation initiated by Ibex, it was confirmed that certain files on Ibex's systems may have been accessed without authorization between July 27, 2020, and August 17, 2020 (the "Data Incident").  Pls.' Compl., ¶ 4.  One or more of the impacted files contained the personally identifiable information ("PII") of 174,826 individuals.  Pls.' Compl., ¶ 4.  According to Defendants, such PII included names, addresses, dates of birth, Social Security numbers, and medical information.  Pls.' Compl., ¶ 5.  Plaintiffs received formal notice of the Data Incident on or around August 6, 2021, and commenced this class action lawsuit, alleging Defendants failed to sufficiently protect their PII.  Pls.' Compl., ¶¶ 12, 17, 25.

After months of litigation and hard-fought settlement negotiations, the Parties have reached a settlement that provides substantial benefits to the Settlement Class. Specifically, the Settlement Agreement[1] provides monetary relief that will: (i) reimburse Out-of-Pocket Losses to Settlement Class Members who incurred expenses or losses as a result of the Data Incident; (ii) reimburse each

_____

[1] Unless otherwise stated, all capitalized terms shall have the definitions set forth in the Settlement Agreement and Release ("Settlement Agreement"), attached as Exhibit A to the Declaration of William B. Federman in Support of Plaintiffs' Motion for Preliminary Approval of Settlement. Citations to the Settlement Agreement will be abbreviated as "SA, ¶ ___."

Settlement Class Member for up to five (5) hours of Lost Time spent responding to the Data Incident at a rate of $25.00 an hour; and (iii) provide a cash payment of $100.00 to Settlement Class Members who experienced actual or attempted identity theft or who experienced other verifiable misuse. SA, ¶¶ 53, 55, 59.  In addition, all Settlement Class Members are eligible to receive five (5) years of three-bureau Credit Monitoring and Identity Theft Protection Services provided by Experian, including daily three-bureau credit monitoring with Equifax, Experian, and TransUnion, identity restoration services, and $1 million in identity theft insurance, among other features. SA, ¶ 58.  The above payments will be paid out of a Settlement Fund to be established by Ibex, in the amount of $2,400,000.00.  SA, ¶ 47. The Settlement Fund will also pay for the cost of notice to the Settlement Class, as well as the costs of settlement administration, service awards to Plaintiffs, and attorneys' fees and expenses that may be awarded by the Court. SA, ¶ 51.

As further discussed, the Settlement falls within the range of judicial approval and includes a comprehensive notice plan. Ibex does not oppose the relief requested in the motion.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Ibex provides customer service, technical support, revenue generation, and other office services across the United States and internationally.  Pls.' Compl., ¶ 1.  Ibex serves various industries including banking and financial services, delivery and logistics, health tech and wellness, retail and e-commerce, streaming and entertainment, travel and hospitality, and utility. Pls.' Compl., ¶ 1.

On August 17, 2020, Ibex discovered a Data Incident had occurred in which a malware attack had been launched on its systems.   Pls.' Compl., ¶ 4. A third-party investigation determined the attack took place between July 27, 2020 and August 17, 2020, and that certain files on Ibex's systems may have been accessed.  Pls.' Compl., ¶ 4.  Among the information

within one or more of the impacted files were names, addresses, dates of birth, Social Security numbers, and medical information of approximately 174,826 individuals.  Pls.' Compl., ¶ 5. Although Ibex was unaware of any attempted or actual misuse of personal information, it provided notice of the Data Incident to potentially affected individuals on or around August 6, 2021.  Pls.' Compl., ¶¶ 12, 17.

On March 3, 2022, Plaintiffs filed a class action complaint against Ibex in the United States District Court for the District of Columbia. ECF No. 1. Rather than committing to protracted litigation, after Ibex was served, counsel for the Parties began to exchange information and discuss the possibility of resolving the case.  During this time, the Parties exchanged informal discovery and detailed pre-mediation materials.  On June 6, 2022, the Parties participated in a full-day mediation session with experienced mediator the Honorable John W. Thornton (Ret.) ("Judge Thornton (Ret.)").  Although the mediation went into the evening hours, the Parties were unable to reach a resolution.  However, meaningful progress had been made, and the Parties continued subsequent settlement talks and further exchanges of information.  The Parties participated in a second full-day mediation session with Judge Thornton on July 13, 2022.  At the conclusion of the second mediation, Judge Thornton (Ret.) proposed the $2,400,000.00 Settlement, which was accepted by the Parties.  Thereafter, the Parties worked diligently in an effort to negotiate the specific settlement terms, engage a proposed settlement claims administrator, negotiate and establish a proposed notice program to provide notice of the settlement to class members, and draft a settlement agreement and its exhibits, including the proposed notices, claim form, and orders. The Agreement was finalized and executed on October 24, 2022. Plaintiff now seeks preliminary approval of that Agreement.

### III.    THE SETTLEMENT AGREEMENT

#### A.    Definition of the Class

The Parties contemplate certification, for settlement purposes only, of a nationwide class. The Settlement Class is comprised of 174,826 individuals. The proposed Settlement Class is defined as follows:

> All individuals who were sent notification by Ibex that their personal information was or may have been compromised in the Data Incident.

SA, ¶ 40.

The Settlement Class specifically excludes: (i) the judges presiding over this Action, and members of their direct families; and (ii) Settlement Class Members who submit a valid a Request for Exclusion prior to the Opt-Out Deadline. SA, ¶ 40.

#### B.    The Settlement Terms and Benefits to the Settlement Class

##### 1.    The Non-Reversionary Settlement Fund

Ibex will establish a Settlement Fund of $2,400,000.00 within ten (10) days of the Preliminary Approval Order. SA, ¶ 47. The Settlement Fund is non-reversionary and will at no point in time revert to Ibex, except in the event the Settlement Agreement is terminated. SA, ¶ 48. As further described below, the Settlement Fund will be used by the Settlement Administrator to pay for the following: (i) Notice and Administrative Expenses, (ii) Taxes and Tax-Related Expenses, (iii) Approved Claim(s) for Out-of-Pocket Losses; (iv) Approved Claim(s) for Lost Time; (v) Approved Claims for Credit Monitoring and Identity Theft Protection Services; (vi) Approved Claims for Cash Payments for Identity Theft or Data Misuse; (vii) Service Awards Payments approved by the Court, (viii) Fee Award and Costs approved by the Court; and (ix) Residual Cash Payments. SA, ¶ 51. Any remaining funds in the Settlement Fund will be distributed to the Non-profit Residual Recipient, National Cybersecurity Alliance. SA, ¶ 51.

### 2.    Identity Theft Protection and Credit Monitoring Package

All Settlement Class Members are automatically eligible to receive, free of charge, five (5) years of three-bureau Credit Monitoring and Identity Theft Protection Services provided by Experian. SA, ¶ 58.  The Credit Monitoring and Identity Theft Protection Services will provide Settlement Class Members with extensive credit monitoring and privacy protection, including identity restoration services, and $1,000,000.00 in identity theft insurance.  *See* SA, ¶ 58.  The retail price of an Experian package that includes each of these levels of protection is $19.99 per month.[2]  Accordingly, this Settlement category alone provides a benefit worth approximately $1,200 to each Settlement Class Member who claims this benefit.[3]

### 3.    Reimbursement for Lost Time

In addition to the Credit Monitoring and Identity Theft Protection Services, Settlement Class Members are also eligible to receive a reimbursement for Lost Time. *See* SA, ¶ 55. Class Members can receive this reimbursement by simply providing the number of hours they spent in response to the Data Incident and a brief description of the actions taken. SA, ¶ 55 and at Exhibits 3-4.  Reimbursements for Lost Time will be paid at a rate of twenty-five dollars ($25.00) per hour for up to five (5) hours, for a maximum payment of $125.00 per individual. SA, ¶ 55. A claim for reimbursement for Lost Time may be combined with a claim for Credit Monitoring and Identity Theft Protection Services, Out-of-Pocket Losses, and Cash Payments for Identity Theft or Data Misuse.

---

[2] *See* https://www.experian.com/consumer-products/compare-identity-theft-products.html.

[3] Because, the Settlement will provide services to a large number of individuals, the Parties have negotiated with Experian to receive discounted bulk pricing for this benefit to reduce the cost from the Settlement Fund.

### 4.     Reimbursement for Out-of-Pocket Losses

Settlement Class Members may submit a claim for reimbursement for Out-of-Pocket Losses, not to exceed $5,000.00. SA, ¶ 53. In order to receive reimbursement for Out-of-Pocket Losses, Settlement Class Members must submit a valid Claim Form, including documentation supporting the loss and a brief description of the documentation describing the nature of the loss, if the nature of the loss is not apparent from the documentation alone. SA, ¶ 53. A claim for reimbursement for Lost Time may be combined with a claim for Credit Monitoring and Identity Theft Protection Services, Lost Time, and Cash Payments for Identity Theft or Data Misuse. However, a Settlement Class Member can only receive up to cash payments of up to $5,000.00, which does not include the costs for Credit Monitoring and Identity Theft Protection Services. SA, ¶53.

### 5.     Cash Payments for Identity Theft or Data Misuse

Settlement Class Members are also eligible to receive a Cash Payment for Identity Theft or Data Misuse of $100.00. SA, ¶ 59.  To receive the Cash Payment for Identity Theft or Data Misuse, Settlement Class Members will submit a valid Claim Form that includes documentation demonstrating the Settlement Class Member experienced actual or attempted identity theft or other verifiable misuse, including receiving fraud alerts or alerts of information being on the dark web. SA, ¶ 59. An individual may submit a Claim Form for a Cash Payment for Identity Theft or Data Misuse along with any other Settlement benefit as long as the aggregate cash payment does not exceed $5,000.00 per Claimant. SA, ¶ 59.

### 6.     Distribution of Benefits to Settlement

Payments for all approved Claims for cash payments (*i.e.*, for reimbursement of Out-of-Pocket Losses, reimbursement for Lost Time, and Cash Payment for Identity Theft or Data Misuse)

will be issued by check and mailed to each Claimant with a valid claim. In the event the Settlement Fund is unable to pay all claims, the claims will be subject to pro-rata distribution. *See* SA, ¶ 69. In the event that there are funds in the Residual Settlement Fund (*i.e.*, after all payments/distributions are made for Approved Claims for Out-of-Pocket Losses, Approved Claims for Lost Time, Approved Claims for Credit Monitoring and Identity Theft Protection Services and Approved Claims for Cash Payments for Identity Theft or Data Misuse), each Settlement Class Member shall receive a Residual Cash Payment of up to $95.00 per Claimant. *See* SA, ¶ 69.

### 7.    Confirmatory Discovery

Under the Settlement, within twenty-one (21) days of Preliminary Approval, Ibex will provide Class Counsel with Confirmatory Discovery to further confirm that Ibex has implemented enhancements to its security posture sufficient to effectively remediate the issues that allowed the Data Incident to occur.  The Confirmatory Discovery will include: (1) documents demonstrating Ibex's security posture prior to the Data Incident and as it exists now, including policies, procedures and training materials; (2) correspondence with states' attorneys' general regarding the Data Incident and Ibex's response thereto; (3) documents sufficient to show that Settlement Class Members' personal information is no longer in the possession of any third party(ies) and has been deleted; (4) documents showing the remedial measures taken by Ibex in response to the Data Incident and the cost of the remedial measures to date; and (5) such other documents as necessary to reasonably establish to Class Counsel that Ibex has implemented measures to protect Settlement Class Members' personal information from further unlawful intrusions. *See* SA, ¶ 71.

### 8.     Notice

The proposed Notice scheme provides all information required by Rule 23(c)(2)(B). The Notice Plan lays out a program for notifying Class members of the Settlement and their rights.  *See* SA, § IX. The details of the notice process are outlined in Section VI.

### 9.     Attorney's Fees, Expenses, and Service Awards

Class Counsel will file a motion for an award of attorney's fees and litigation costs and expenses to be paid from the Settlement Fund. However, Class Counsel's request for attorneys' fees will not exceed 30% of the Settlement Fund and the request for reimbursement of litigation expenses will not exceed $30,000.00. SA, ¶ 95. *See* Newberg on Class Actions § 14.6 (4th ed. 2007) ("[F]ee awards in class actions average around one-third of the recovery."); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377-78 (N.D. Cal. 1989) ("[N]early all common fund fee awards range around 30%" of the overall fund recovered) (collecting cases); *see, e.g., Bynum v. D.C.*, 412 F. Supp. 2d 73, 81 (D.D.C. 2006) (awarding attorneys' fees of 33.33% of settlement fund). The Settlement Agreement also provides Service Award Payments to the Class Representatives in the amount of $4,000.00 each for their time and dedication towards receiving this favorable outcome to the Class. *See In re Lorazepam & Clorazepate Antitrust Litig.*, No. 99MS276(TFH), 2003 WL 22037741, at *10-11 (D.D.C. June 16, 2003) ("[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred") (citation omitted); *Cobell v. Jewell*, 802 F.3d 12, 24-25 (D.C. Cir. 2015); *see, e.g., Kinard v. E. Capitol Fam. Rental, L.P.*, 331 F.R.D. 206, 217 (D.D.C. 2019) (approving $5,000 service awards to plaintiffs who "participate[d] in a lengthy mediation process").

## IV.    THE PROPOSED SETTLEMENT WARRANTS PRELIMNARY APPROVAL

The Settlement resolves this litigation on highly favorable terms for the Class.  The Settlement was achieved only after extensive arm's length negotiations among the Parties, including two mediation sessions with Judge Thornton (Ret.).  The Settlement provides valuable benefits and monetary compensation to Settlement Class Members, and it confirms that Defendants have made meaningful changes to its data security measures sufficient to remediate the vulnerabilities that led to the Data Incident. The Settlement compares favorably to previous data breach settlements when weighed against the risks associated with continued litigation.  Having weighed the likelihood of success and inherent risks and expense of litigation, Plaintiffs and Class Counsel strongly believe that the proposed settlement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2).  Thus, it should be preliminarily approved under Federal Rule of Civil Procedure 23(e).

### A.    Standards for Preliminary Approval

Public policy favors settlement, particularly in class actions. *See Kinard*, 331 F.R.D. at 213 (reiterating there is a "long-standing judicial attitude favoring class action settlements") (citations omitted); *Osher v. SCA Realty I, Inc.*, 945 F. Supp. 298, 304 (D.D.C. 1996) ("In the context of class actions, settlement is particularly appropriate given the litigation expenses and judicial resources required in many such suits."). The Court's "primary task is to evaluate the terms of the settlement in relation to the strength of the plaintiffs' case." *Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998). "Generally, preliminary approval . . . will be granted if [the settlement] appears to fall 'within the range of possible approval' and 'does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of

segments of the class, or excessive compensation for attorneys.'" *Trombley v. Nat'l City Bank*, 759 F. Supp. 2d 20, 23 (D.D.C. 2011) (citations omitted).

A court's review of a proposed class action settlement involves a two-step process: (i) preliminary approval, and (ii) a subsequent fairness hearing. *Manual for Complex Litigation, Fourth* § 21.632 (2004); *see also* Fed R. Civ. P. 23(e).  At the preliminary approval stage, a court will review the proposed settlement and make an initial determination as to whether the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Under Rule 23(e)(1)(B), a court considering preliminary approval need only consider whether it "will likely be able to" grant final approval of the settlement and certify the class for settlement purposes.

The criteria guiding the Court's the preliminary-approval determination are supplied by Federal Rule of Civil Procedure 23(e)(2), which requires consideration of whether:

    (A) the class representatives and class counsel have adequately represented the class;

    (B) the proposal was negotiated at arm's length;

    (C) the relief provided for the class is adequate, taking into account:

        (i) the costs, risks, and delay of trial and appeal;

        (ii) of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv) any agreement required to be identified under Rule 23(e)(3); and

    (D) the proposal treats class members equitably relative to each other.

## B.    The Settlement is Fair, Reasonable and Adequate

All of the above criteria support preliminary approval of the Settlement in this case. The Settlement secures reimbursements for Out-of-Pocket Losses, reimbursements for Lost Time, and

Cash Payments for Identity Theft or Data Misuse to eligible Settlement Class Members. Ibex has also offered comprehensive Credit Monitoring and Identity Theft Protection Services to all to all Data Incident victims. Decl. of William B. Federman in Supp. of Pls.' Mot. for Preliminary Approval of Settlement "Federman Decl." ¶ 3. The Settlement meets all requirements of Federal Rule of Civil Procedure 23(e) with its substantial payments, streamlined claim procedure, and an adequate notice plan. The Settlement, thus, merits Court approval.

### 1.    The Class Representatives and Class Counsel Have Adequately Represented the Class

The first factor the Court considers when reviewing class action settlements is the adequacy of Class Counsel and Class Representatives. "Two criteria for determining the adequacy of representation are generally recognized: (1) the named representative must not have antagonistic or competing interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C.Cir.1997) (internal quotation omitted).

Here, the proposed Class Representatives do not have antagonistic or competing interests with unnamed members of the Class. The named Plaintiffs and the Class Members share the identical objectives of establishing liability and obtaining damages. There are no conflicts between the Class representatives and the Settlement Class, meaning the representatives provide adequate representation of the Class as a whole.

Proposed Class Counsel are highly experienced class action litigators who have, and will continue to, vigorously prosecute the interests of the Class Members. *See* Federman Decl. ¶ 6 and Exhibit B, thereto. Indeed, proposed Class Counsel have vigorously litigated the Action to date, including: (i) conducting a thorough pre-suit investigation that resulted in the preparation of a detailed complaint; (ii) gathering Plaintiffs' documents and relevant information; (iii) requesting

and reviewing relevant informal discovery; (iv) participating in extensive settlement discussions; and (v) achieving a very favorable Settlement on behalf of the Settlement Class. Thus, there is no reason to doubt proposed Class Counsel's adequacy. Based on the foregoing, this factor supports preliminary approval of the settlement.

### 2.    The Settlement is the Product of Informed, Arm's-Length Negotiations

The next factor examines the negotiation process. This factor asks whether the negotiations were made at arm's length. There is "[a] presumption of fairness, adequacy, and reasonableness" where a settlement is "reached in arm's length negotiations between experienced, capable counsel after meaningful discovery," *Kinard*, 331 F.R.D. at 215. However, "formal discovery is not required for preliminary approval and is not necessarily required even for final approval of a proposed settlement." *Trombley*, 759 F. Supp. 2d at 26 (D.D.C. 2011); *see, e.g., Osher*, , 945 F. Supp. at 306 (finding that a "fair evaluation of the claims [ ] may be made prior to discovery" and approving settlement even though case "settled very early in the litigation process with little discovery").

Here, "both sides negotiated at arms-length and in good faith," and "the interests of the class members were adequately and zealously represented in the negotiations." *Blackman v. District of Columbia*, 454 F. Supp. 2d 1, 9 (D.D.C. 2006); *see* Federman Decl. ¶ 4. The Settlement is the product of extensive arm's-length negotiations conducted by experienced counsel and a well-respected mediator, all of whom are knowledgeable in complex consumer class actions, including data breach class actions. Federman Decl. ¶ 4. The Settlement reflects the progress of months of negotiations, the preparation and review of detailed mediation statements and other pre-mediation materials, and the review of relevant informal discovery. The Parties were only able to reach the Settlement after two full-day mediation sessions with the Honorable John W. Thornton (Ret.) who

has extensive experience mediating data breach class settlements. *Dew v. Mindfinders, Inc.*, No. CV 20-2930 (BAH), 2021 WL 4797551, at *5 (D.D.C. Oct. 14, 2021) (participation of "an experienced and respected mediator . . . further bolsters the arm's length nature of the negotiations") (citations omitted). At the end of even the second mediation session, the Parties had not reached a resolution.  It was only through a mediator's proposal that the Settlement was reached.

Class Counsel have considerable experience in handling consumer class actions, including data breach class actions, and are clearly capable of assessing the strengths and weaknesses of a case.  *See* Federman Decl. Exhibit B.  The experience of the attorneys involved demonstrate the Settlement Class Members were well-represented at the bargaining table.  *See* Federman Decl. Exhibit B.; *Howard v. Liquidity Servs. Inc.*, No. CV 14-1183 (BAH), 2018 WL 4853898, at *4 (D.D.C. Oct. 5, 2018) ("The sophistication and experience of counsel support the arm's-length nature of the negotiations in this case, and the length and nature of the settlement negotiations further support this conclusion."). Thus, this factor tips in favor of preliminary approval of the settlement.

### 3.    The Settlement Relief Provided to Class Members is Highly Favorable, Particularly Given the Costs, Risks, and Delays of Further Litigation

The third and "most important factor" examines "how the relief secured by the settlement compares to the class members' likely recovery had the case gone to trial." *Blackman*, 454 F. Supp. at 9-10. This factor focuses on "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including

timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."[4] Fed. R. Civ. P. 23(e)(2); *see also In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d at 16. Because "the outcome of litigation is always uncertain and inevitably time-consuming and expensive," a class settlement may be adequate even if it provides "only a fraction of the potential recovery" at trial. *In re New Jersey Tax Sales Certificates Antitrust Litig.*, 750 F. App'x 73, 82 (3d Cir. 2018) (internal citation omitted); *see, e.g.*, *In re Fed. Nat'l Mortg. Ass'n Sec., Deriv. & "ERISA" Litig.*, 4 F. Supp. 3d 94, 103–04 (D.D.C. 2013); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 495 (S.D.N.Y. 2018) (finding no reason "why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery") (citations omitted). The Court "must, of course, guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise," *In re GMC Truck Fuel Tank Prods. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995), and "relief might well be delayed for years if this case were to be litigated, even if plaintiffs prevailed." *Luevano v. Campbell*, 93 F.R.D. 68, 89 (D.D.C. 1981).

"Data breach" actions "are particularly risky, expensive, and complex." *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019). "Beyond the novel state of the law in regards to identity theft, there are inherent issues of causation" that would have resulted in protracted and uncertain litigation. *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010); *Koenig v. Lime Crime, Inc.*, No. CV 16-503 PSG (JEMx), 2018 WL 11358228, at *3 (C.D. Cal. Apr. 2, 2018) (approving data breach settlement and finding in part that "[b]ecause of the difficulty of proving damages and causation, Plaintiffs faced a substantial

---

[4] Other than the Settlement Agreement, there is no other agreement required to be identified under Rule 23(e)(3).

risk of losing at summary judgment or at trial."); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *5 (N.D. Ga. Aug. 23, 2016) ("[E]stablishing causation . . . has been a barrier to consumer plaintiffs' success" in data breach litigation); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-MD- 2633-SI, 2019 WL 3410382, at *21 (D. Or. July 29, 2019) (granting preliminary approval, recognizing "Plaintiffs have a weaker case with respect to damages . . . and the number of Class Members who appear to have suffered actual identity theft or out-of-pocket damages that can reasonably be attributed to the Data Breach appears to be relatively low.").

The $2,400,000.00 Settlement Fund and the categories of benefits achieved in this case is a very favorable result for the Settlement Class Members. Those who submit a valid Claim Form have the opportunity to receive <u>all</u> of the following benefits: cash reimbursement of Lost Time up to $125.00; reimbursement of Out-of-Pocket Losses up to $5,000.00; Cash Payments for Identity Theft or Data Misuse of $100.00; and Credit Monitoring and Identity Theft Protection Services for five (5) years. These Settlement benefits compare very favorably to those of other data breach class action settlements that have been approved by other courts. *See, e.g., Sackin v. TransPerfect Global, Inc*., Case No. 1:17-cv-01469-LGS (Dec. 14, 2018) (ECF Nos. 63, 74) (approving settlement providing only 3 years of identity theft protection and reimbursement of out-of-pocket expenses); *In re: Arby's Rest. Grp., Inc. Data Sec. Litig.*, Case No. 1:17-cv-01035-WMR (N.D. Ga.) (ECF Nos. 187-1, 190) (approving settlement providing only reimbursements for out-of-pocket losses and time spent); *In re Zappos Sec. Breach Litig.*, No. 12-cv-00325 (D. Nev.) (ECF No. 418 at 2) (settlement provided "10% coupon" for Zappos goods).

Moreover, the outstanding benefits made available under the Settlement would not be guaranteed if facing trial. Indeed, absent the instant Settlement, Plaintiffs would have had to

survive numerous motions by Defendants, prevail at trial, and secure an affirmance of their victory on appeal in order to recover damages. Moreover, they would also need to certify and maintain the Class, over the Defendants' possible opposition. Instead, the Parties were able to craft a settlement providing substantial monetary benefits to the Settlement Class, while avoiding the expense and delay of continued litigation. The Court's acceptance and approval of the Settlement Agreement is preferable in comparison to the continuation of lengthy and expensive litigation with uncertain results.

The Settlement terms are especially favorable when considered in the light of the numerous significant risks associated with continued case prosecution. Plaintiffs understand that proceeding to trial is risky. Plaintiffs anticipate Defendants would contest Plaintiffs' claims at every opportunity and on all fronts. Further, Plaintiffs would have to establish that Ibex was negligent in maintaining adequate data security measures, which would involve a battle of the experts regarding highly complex technical issues surrounding the security of computer databases and cyberattacks. Although Plaintiffs are confident the Action has merit, prevailing at trial would create substantial risk and delay. Advancing the case to trial would likely take years, and would involve numerous fact witnesses, experts, and the introduction of voluminous documentary evidence. By settling, Plaintiffs avoid the risks associated with continuing litigation and guarantee a quicker recovery to the Settlement Class.

For the reasons discussed, this factor also weighs in favor of preliminary approval of the settlement.

### 4. The Settlement Agreement Treats Class Members Equitably Relative to Each Other

The fourth factor examines whether the settlement treats class members equitably vis-à-vis one other. Here, the Settlement's claims and allocation provisions treat all class members

equitably relative to each other, Fed. R. Civ. P. 23(e)(2)(D), further weighing in favor of approval. A plan for distributing a settlement fund is "sufficient" if "there is 'a rough correlation' between the settlement distribution and the relative amounts of damages recoverable by Class Members." *Howard*, 2018 WL 4853898, at \*7 (citations and alteration omitted).

Each Class Member is entitled to receive Credit Monitoring and Identity Theft Protection Services for five (5) years. SA, ¶ 58. Additionally, each Class member who submits a valid Claim Form will be eligible to receive reimbursements for Out-of-Pocket Losses, reimbursements for Lost Time, and a Cash Payment for Identity Theft or Data Misuse. SA, ¶ 53, 55, 59. Each Settlement Class Member's aggregate cash payment amount will be capped at $5,000.00. SA, ¶ 53, 55, 59. The same criteria that determines eligibility for each of these reimbursements and payments will govern the entire Settlement Class. SA, ¶ 54, 56, 60. Additionally, a neutral third party, the Settlement Administrator, will determine eligibility. SA, ¶ 54, 56, 60. Any Settlement Class Member who disagrees with the eligibility decision made may dispute this decision. SA, ¶ 57. All Class Members are on equal footing under this settlement, while still allowing those who have incurred significant harm to receive adequate compensation. Thus, this factor tips in favor of approval of the settlement.

### 5.    The Plaintiffs and Class Counsel Support the Settlement

The final relevant factor is not enumerated in the text of Rule 23, but is well-settled in this jurisdiction's case law.    Under this Court's cases, "the opinion of experienced and informed counsel should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *Prince v. Aramark Corp.*, 257 F. Supp. 3d 20, 26 (D.D.C. 2017); *See Stewart v. Rubin*, 948 F. Supp. 1077, 1087 (D.D.C. 1996) ("A court should defer to the judgment of experienced counsel who have competently evaluated the strength of the proof.").

17

The Settlement is supported by all of the named Plaintiffs as well as by Class Counsel. *See* Federman Decl. at Exhibit A. Counsel for both parties "are clearly of the opinion that the settlement in this action is fair, adequate, and reasonable," which only further confirms its reasonableness. *Cohen v. Chilcott*, 522 F.Supp.2d 105, 121 (D.D.C. 2007). For these reasons, the Settlement falls well within the range of possible approval and should be preliminarily approved by the Court.

## V.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS.

The Settlement Class is cohesive, objectively defined, and likely to be certified upon entry of judgment. *See* Fed. R. Civ. P. 23(e)(1). Class certification is appropriate if all Rule 23(a) subdivisions and at least one Rule 23(b) subdivision are satisfied. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Plaintiffs seek class certification under Rule 23(b)(3) for settlement purposes only. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); SA, ¶ 83.

### A.    Federal Rule of Civil Procedure 23(a) Criteria is Met

#### 1.    The Class Members are too Numerous for their Claims to be Feasibly Joined

Numerosity under Federal Rule of Civil Procedure 23(a)(1) is satisfied because Defendants' records indicate that there are 174,826 Settlement Class Members. Pls.' Compl., ¶ 4; *see Hoyte v. District of Columbia*, 325 F.R.D. 485, 490 (D.D.C. 2017) (numerosity may be presumed if there are 40 class members, and "can be satisfied so long as there is a reasonable basis for the estimate provided.") (emphasis and citation omitted).

#### 2.    The Data Incident and Its Consequences are Common Issues that Apply to All Class Members

The commonality requirement of Federal Rule of Civil Procedure 23(b)(2) also is met. *See Brown v. District of Columbia*, 928 F.3d 1070, 1080 (D.C. Cir. 2019) (requiring a "common

contention . . . capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.") (citation omitted); *In re District of Columbia*, 792 F.3d 96, 100 (D.C. Cir. 2015) (even a single common question may suffice).

Here, there are numerous issues of fact and law common to the Settlement Class, including, *inter alia*, whether: (a) Defendant had a duty to safeguard the Settlement Class Members' PII; (b) Defendant was negligent in maintaining adequate data security protocols; and (c) the Settlement Class Members were injured by having their PII potentially accessed by unauthorized parties while on Defendant's systems. *See In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508, at *8 (M.D. Fla. Apr. 14, 2021) (finding these issues common to the class).

### 3.    Plaintiffs' Claims are Typical of the Class

Similarly, Plaintiffs' claims are typical of the Class under Federal Rule of Civil Procedure 23(a)(3) because they arise from the same Data Incident and course of conduct— Defendants' alleged gross negligence in failing to secure sensitive data—and assert the same legal theories. *See Hardy v. District of Columbia*, 283 F.R.D. 20, 25 (D.D.C. 2012) (a claim is "typical if it arises from the same event or practice or course of conduct that gives rise to a claim of another class member's where his or her claims are based on the same legal theory.") (citation omitted).

### 4.    Plaintiffs and Class Counsel are Adequate Representatives

Rule 23 also requires that representative plaintiffs "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied if the plaintiff: (1) is represented by counsel who is "qualified, experienced and able to conduct the litigation[;]" and

(2) does not possess interests "antagonistic to the interest of other class members[.]" *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

The adequacy requirement is met here. Plaintiffs' interests in this litigation do not conflict with those of any Class Member. They vigorously pursued the class claims, communicated with their attorneys, provided evidence, and evaluated settlement terms. *See Twelve John Does*, 117 F.3d at 575. Plaintiffs' claims are also co-extensive with those of the Settlement Class. *See supra*, Sections V.A.2-3.

Class Counsel also satisfy the adequacy requirement. Class Counsel has successfully served as lead or co-lead counsel in several national class actions and class action settlements, as well as other complex cases litigated on behalf of consumers. *See* Federman Decl. Exhibit B. Class Counsel devoted substantial time and energy to litigating this action through settlement. *See* Federman Decl. ¶ 4. Class Counsel are experienced and have demonstrated their skills and commitment to pursuing the Class members' best interests, including by negotiating a fair and adequate resolution of their claims. *See generally*, Federman Decl. As such, the Court should appoint these attorneys as Class Counsel under Rule 23(g). *See e.g.*, *Hardy*, 283 F.R.D. at 25 ("The Court is satisfied that Plaintiffs and counsel have met the adequacy requirement.").

### B. Federal Rule of Civil Procedure 23(b) Is Met

The predominance and superiority requirements of Rule 23(b)(3) are met as well. All Class Members had PII potentially exposed in the Data Incident and the security practices at issue did not vary from person to person. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1275 (11th Cir. 2021) (affirming settlement class certification where "all . . . claims arise out of the same unifying event, Equifax's data privacy breach."). The key issues of

Defendants' conduct and negligence are the same for each Class member and predominate. *See, e.g.*, *Coleman v. District of Columbia*, 306 F.R.D. 68, 85-86 (D.D.C. 2015).

Simply put, all Class Members put their data in the same box. The box was either protected or unprotected in accordance with the necessary statutes or standards, so whether there was a breach of a duty is not different from plaintiff "A" and plaintiff "B." Thus, because these common questions "represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." *Brown v. District of Columbia*, No. CIV. A. 91-0132, 1991 WL 255458, at *3 (D.D.C. Nov. 15, 1991) (citing Wright & Miller, *Federal Practice & Procedure* § 1778).

Moreover, because the potential individual recoveries are relatively small, most people affected by a data breach lack incentive to retain counsel to assert individual claims. *See Coleman*, 306 F.R.D. at 87–88 (superiority is "often found when use of the class action device would enable vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.  In such circumstances, multiple lawsuits would be costly and inefficient") (quotation marks, citations and alterations omitted). Thus, a class action is a superior means of resolving this controversy given the efficiencies and other benefits to be gained by resolving claims relating to the data breaches in a single proceeding.

## VI.    THE NOTICE AND NOTICE PROGRAM WILL PROVIDE CLASS MEMBERS THE BEST NOTICE PRACTICABLE UNDER THE CIRCUMSTANCES AND SHOULD BE APPROVED BY THIS COURT

The proposed Notice and notice plan meet all applicable requirements. The Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Members of a class certified under Rule 23(b)(3) are entitled to the best

notice that is practicable under the circumstances, including individual notice to members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). The Court's assessment of what is "the best notice . . . practicable" may be informed by the cost of providing different forms of notice and the availability and accuracy of records identifying class members. *See In re Domestic Airline Travel Antitrust Litig.*, 322 F. Supp. 3d 10, 70–72 (D.D.C. 2018). Additionally, this standard does not require that every class member actually receive notice. *In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, 271 F. App'x 41, 44 (2d Cir. 2008).

Here, Ibex will provide the Settlement Administrator with a list of names and addresses of all Settlement Class Members in its records. S4, ¶ 72. This is likely 100% of the Settlement Class. The Settlement Administrator will then mail the Postcard Notice and Postcard Claim Form to members of the Class. SA, ¶ 74. The Notice sent to Class Members will also inform Class Members of their "opt-out" and objection rights. *See* SA, ¶ 77.

In addition to mailing notice to the Class Members, the Settlement Administrator will establish a website where Class Members can view and access the Notices, Claim Form, Settlement Agreement, and other pertinent information about the Settlement. *See* SA, ¶ 75. The Settlement website will also include a toll-free telephone number, e-mail address, and mailing address through which Settlement Class Members may contact the Settlement Administrator directly.

The proposed Notices are plain and easily understood. The Notices describe the claims, the relief provided under the Settlement, and Settlement Class Members' rights and options, including the deadlines and means of submitting a Claim Form, objecting, and/or appearing at the Final Approval Hearing. *See* Federman Decl., at Exhibits A-1 and A-4. The Notices also provide

information regarding attorney's fees and Service Award Payments.  Plaintiffs submit that the

Notice Program is reasonable and provides the best notice practicable under the circumstances.

**VII.  <u>CONCLUSION</u>**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed

order granting preliminary approval and authorizing the settlement notice and claim process.


Dated: October 24, 2022                                      Respectfully submitted,


<u>/s/ William B. Federman</u>
William B. Federman
(admitted *pro hac vice*)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
wbf@federmanlaw.com

A. Brooke Murphy
(admitted *pro hac vice*)
**MURPHY LAW FIRM**
4116 Will Rogers Pkwy, Suite 700
Oklahoma City, OK 73108
Telephone: (405) 389-4989
abm@murphylegalfirm.com

*Proposed Class Counsel*

David K. Lietz
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877
dlietz@milberg.com

*Proposed Liaison Counsel*

23

**CERTIFICATE OF SERVICE**

I hereby certify that on October 24, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *William B. Federman*
William B. Federman