# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MONIQUE SANDERS, DARLA SOICH, and CHRISTOPHER HARRISON, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>IBEX GLOBAL SOLUTIONS, INC., and IBEX LIMITED,<br><br>    Defendants. | Case No. 1:22-cv-00591-TNM |

### MEMORANDUM OF POINTS AND AUTHORITIES IN IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   FACTUAL & PROCEDURAL BACKGROUND ....................................................... 2

III.  SETTLEMENT TERMS AND BENEFITS ............................................................... 5

A.    Settlement Class ........................................................................................................ 5

B.    The Settlement Terms and Benefits of the Settlement Agreement ........................... 5

   1.   The Non-Reversionary Settlement Fund ............................................................... 5

   2.   Identity Theft Protection and Credit Monitoring Package .................................... 6

   3.   Reimbursement for Lost Time ............................................................................... 6

   4.   Reimbursement for Out-of-Pocket Losses ............................................................ 7

   5.   Cash Payments for Identity Theft or Data Misuse ................................................ 7

   6.   Confirmatory Discovery ........................................................................................ 8

   7.   Notice, Claims Process, and Settlement Administration ....................................... 8

   8.   Attorneys' Fees, Expenses, and Service Awards ................................................... 9

IV.   THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL .................... 9

A.    Legal Standards for Approval ................................................................................. 10

B.    Rule 23(e) and the Supplemental Factors Weigh in Favor of Granting Final Approval ...... 11

   1.   Rule 23(e)(2)(A): Class Representatives and Class Counsel Adequately Represented
        the Class ............................................................................................................... 11

   2.   Rule 23(e)(2)(B) and Supplemental Factor 1: The Settlement Was Negotiated at
        Arm's-Length ....................................................................................................... 12

   3.   Rule 23(e)(2)(C–D): The Relief Provided for the Class is Adequate and Class
        Members are Treated Equitably ........................................................................... 13

   4.   The Remaining Supplemental Factors Support Final Approval ........................... 16

a.  Supplemental Factor 2: Terms of the Settlement Compared to the Strength Case....... 16

b.  Supplemental Factor 3: Stage of Litigation at the Time of Settlement......................... 17

c.  Supplemental Factor 4: Reaction of the Class ............................................................. 18

d.  Supplemental Factor 5: Opinion of Experienced Counsel............................................ 20

V.  THE SETTLEMENT CLASS SHOULD BE CERTIFIED .................................................. 21

VI.  THE NOTICE ADEQUATELY APPRISED CLASS MEMBERS..................................... 22

VII.  CONCLUSION..................................................................................................................... 23

# TABLE OF AUTHORITIES

## CASES

*Baksh et al. v. IvyRehab Network, Inc.*,

    No. 7:20-CV-01845 (S.D.N.Y. Jan. 27, 2021) ........................................................................ 14

*Brent v. Midland Funding*,

    LLC, No. 3:11-CV-1332, 2011 WL 3862363 (N.D. Ohio Sept. 1, 2011) ................................ 15

*Cohen v. Chilcott*,

    522 F. Supp. 2d 105 (D.D.C. 2007) ........................................................................................ 17

*Dolmage v. Combined Ins. Co. of Am.*,

    No. 14 C 3809, 2017 WL 1754772 (N.D. Ill. May 3, 2017) .................................................... 17

*Hardy v. District of Columbia*,

    49 F. Supp. 3d 48 (D.D.C. 2014) ............................................................................................ 11

*Howard v. Liquidity Servs. Inc.*,

    No. CV 14-1183 (BAH), 2018 WL 4853898 (D.D.C. Oct. 5, 2018) ........................................ 16

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,

    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ..................................................................................... 16

*In re Anthem, Inc. Data Breach Litig.*,

    327 F.R.D. 299 (N.D. Cal. 2018) ............................................................................................ 19

*In re Austrian and German Bank Holocaust Litig.*,

    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ....................................................................................... 15

*In re Brinker Data Incident Litig.*,

    No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) .......................... 21

*In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*,

No. 18-CV-8472 (PKC), 2022 WL 2063864 (S.D.N.Y. June 8, 2022) .................................. 19

*In re Living Social Marketing and Sales Practice Litigation*,

298 F.R.D. 1 (D.D.C. 2013 ...................................................................................................... 11

*In re Lorazepam & Clorazepate Antitrust Litig.*,

MDL No. 1290, 2003 WL 22037741 (D.D.C. June 16, 2003) ................................................ 17

*In re Lorazepam Antitrust Litig.*,

205 F.R.D. 369, 377 (D.D.C. Feb. 1, 2002) ........................................................................... 18

*In re Target Corp. Customer Data Sec. Breach Litig.*,

892 F.3d 968 (8th Cir. 2018) ................................................................................................... 14

*In re Target Corp. Customer Data Sec. Breach Litig.*,

No. 14-md-2522, 2017 WL 2178306 (D. Minn. May 17, 2017) ............................................ 19

*In re Vitamins Antitrust Litig.*,

305 F. Supp. 2d 100 (D.D.C. 2004) .......................................................................... 10, 12, 20

*In re Vitamins Antitrust Litig.*,

No. 99-197, 1999 WL 1335318 (D.D.C. Nov. 23, 1999) ....................................................... 18

*In re Wawa, Inc. Data Sec. Litig.*,

No. CV 19-6019, 2022 WL 1173179 (E.D. Pa. Apr. 20, 2022) ............................................ 19

*In re Zappos.com, Inc. Sec. Breach Litig.*,

No. 3:12-cv-00325 (D. Nev.) ................................................................................................... 14

*In re: Arby's Rest. Grp., Inc. Data Sec. Litig.*,

No. 1:17-cv-01035-WMR (N.D. Ga.) ...................................................................................... 14

*Lazy Oil Co. v. Witco Corp.*,

    95 F. Supp. 2d 290 (W.D. Pa. 1997) ........................................................................ 15

*Luevano v. Campbell*,

    93 F.R.D. 68 (D.D.C. 1981) ...................................................................................... 19

*Marisol A. v. Giuliani*,

    126 F.3d 372 (2d Cir. 1997) ...................................................................................... 21

*Mayfield v. Barr*,

    985 F.2d 1090 (D.C. Cir. 1993) ................................................................................ 10

*Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*,

    565 F. Supp. 2d 49 (D.D.C. 2008). ............................................................... 11, 12, 20

*Milstein v. Huck*,

    600 F. Supp. 254 (E.D.N.Y. 1984) .......................................................................... 15

*Osher v. SCA Realty I, Inc.*,

    945 F. Supp. 298 (D.D.C. 1996) .............................................................................. 19

*Radosti v. Envision EMI, LLC*,

    717 F. Supp. 2d 37 (D.D.C. 2010) ..................................................................... 10, 20

*Sackin v. TransPerfect Global, Inc.*,

    No. 1:17-cv-01469-LGS (S.D.N.Y. Dec. 14, 2018) ................................................ 14

*Stephens v. U.S. Airways Group, Inc.*,

    102 F. Supp. 3d 222 (D.D.C. 2015) ......................................................................... 11

*Thomas v. Albright*,

    139 F.3d 227 (D.C. Cir. 1998) ................................................................................. 18

*Trombley v. Nat'l. City Bank*,

  826 F. Supp. 2d 179 (D.D.C. 2011) ............................................................................ 18

*Twelve John Does v. District of Columbia*,

  117 F.3d 571 (D.C.Cir.1997) ...................................................................................... 12

*Vista Healthplan, Inc. v. Warner Holdings Co. III*,

  246 F.R.D. 349 (D.D.C. 2007) .................................................................................... 17

## **RULES**

Fed. R. Civ. P. 23 ............................................................................................... passim

## **TREATISES**

Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* (4th ed. 2002) ......................... 15

Herbert B. Newberg, *Newberg on Class Actions* (5th ed. 2020) ................................... 10

Manual for Complex Litig. (3d ed.) ............................................................................ 20

Plaintiffs Monique Sanders, Darla Soich, and Christopher Harrison, individually and on behalf of the Settlement Class (collectively, "Plaintiffs"), submit this Memorandum of Points and Authorities in support of Plaintiffs' Unopposed Motion for Final Approval of Settlement.[1]

## I.    INTRODUCTION

On November 17, 2022, this Court preliminarily approved a settlement between Plaintiffs, on one hand, and Defendant Ibex Global Solutions, Inc. and Defendant Ibex Limited (collectively, "Defendants" or "Ibex"), on the other hand. *See* Order Granting Preliminary Approval of Class Action Settlement and Approving Notice Program ("Preliminary Approval Order"), ECF No. 25. The Settlement provides a very favorable result for the Settlement Class, including substantial monetary benefits, identity theft protection, and insurance.

Specifically, the Settlement provides Settlement Class Members with monetary relief that will: (i) reimburse Out-of-Pocket Expenses of up to $5,000 per Settlement Class Member who incurred expenses or losses as a result of the Data Security Incident (SA, ¶ 53) ; (ii) reimburse each Settlement Class Member for up to five (5) hours of Time Spent responding to the Data Security Incident at a rate of $25.00 per hour, for a potential reimbursement of $125.00 (SA, ¶ 55); and (iii) provide a cash payment for documented identity theft or data misuse (SA, ¶ 59). A Class Member may submit a claim for any combination of the above but are subject to a generous aggregate cap of $5,000. SA, ¶¶ 53, 55, 59. In addition, all Settlement Class Members are eligible to receive five (5) years of 3-Credit Bureau Monitoring offered by Experian, including Credit Report, Identity Protection Services, Identity Restoration Services, and $1,000,000 in Identity Theft Insurance. SA, ¶ 58.

---

[1] Unless otherwise stated, all capitalized terms shall have the definitions set forth in the Settlement Agreement and Release ("Settlement Agreement"), attached as Exhibit A to the Declaration of William B. Federman in Support of Plaintiffs' Motion for Preliminary Approval of Settlement (ECF No. 24-1). Citations to the Settlement Agreement will be abbreviated as "SA, ¶ __."

The Settlement involved a comprehensive notice program and user-friendly claims process, which have been, and are being, implemented by the Settlement Administrator. *See* Declaration of William B. Federman in Support of Plaintiffs' Unopposed Motion for Final Approval of Settlement ("Federman Decl.") (filed contemporaneously herewith), ¶¶ 9–13. The deadline to submit all claims is March 20, 2023. *See* Preliminary Approval Order, at 10–11. The Court-approved notice program provided for direct notice by mail and the creation of a Settlement Website.  SA, ¶¶ 74–76; *See* Federman Decl., ¶¶ 9–13.

The deadline to file objections or to request exclusion expired on February 17, 2023. No objections and no requests for exclusion were received. Federman Decl., ¶ 14. The reaction from Settlement Class Members has been overwhelmingly positive and strongly supports final approval.

In light of the valuable benefits conveyed to members of the Settlement Class, and the significant risks faced through continued litigation, the Settlement is "fair, reasonable, and adequate," and merits final approval.  Fed. R. Civ. P. 23(e)(2).

## II.    FACTUAL & PROCEDURAL BACKGROUND

### A.    The Data Incident

Ibex provides customer service, technical support, revenue generation, and other office services across the United States and internationally. Pls.' Compl., ¶ 1.[2]  Ibex serves various industries including banking and financial services, delivery and logistics, health tech and wellness, retail and e-commerce, streaming and entertainment, travel and hospitality, and utility. Pls.' Compl., ¶ 1.

On August 17, 2020, Ibex discovered a Data Incident had occurred in which a malware attack had been launched on its systems. Pls.' Compl., ¶ 4. A third-party investigation determined

---

[2] "Pls.' Compl." or "Complaint" refer to the Class Action Complaint filed by Plaintiffs on March 3, 2022 (ECF No. 1).

the attack took place between July 27, 2020 and August 17, 2020, and that certain files on Ibex's systems may have been accessed.  Pls.' Compl., ¶ 4.  Among the information within one or more of the impacted files were names, addresses, dates of birth, Social Security numbers, and medical information of approximately 174,826 individuals.  Pls.' Compl., ¶ 5. Although Ibex was unaware of any attempted or actual misuse of personal information, it provided notice of the Data Incident to potentially affected individuals on or around August 6, 2021.  Pls.' Compl., ¶¶ 12, 17.

### B.    The Litigation, Mediation, and Settlement

On March 3, 2022, Plaintiffs filed a detailed Class Action Complaint on behalf of Plaintiffs and the Class (ECF No. 1). The Complaint was the result of considerable work from Class Counsel, including: (i) detailed conversations with and reviews of documents from Plaintiffs Sanders, Harrison, and Soich, as well as other Class Members; (ii) research into publicly available information about the Data Incident, including a review of information Ibex provided to state attorneys general; and (iii) research into industry-standard data security practices and standards.

Following service of the Complaint on Defendants, the Parties communicated concerning the allegations and case schedule. Rather than engage in protracted litigation, counsel for the Parties opened a dialogue and began considering possible options for reaching an early resolution of the case. In furtherance of this objective, the Parties exchanged informal discovery, exchanged detailed pre-mediation materials, and scheduled a mediation session with experienced mediator, the Honorable John W. Thornton (Ret.).

On June 6, 2022, the Parties attended their first full-day mediation session with Judge Thornton. Prior to the mediation, the Parties prepared and served detailed mediation statements, which set forth the legal and factual arguments in favor of their respective positions.  Further, prior to the mediation, Plaintiffs provided Ibex with a proposed term sheet for a potential class settlement.  After a full day of discussions and negotiations that went into the late evening hours,

the mediation ended without resolution. However, meaningful progress was made at this initial mediation session. The Parties continued settlement negotiations and continued to exchange information with the help of Judge Thornton.

On July 13, 2022, the Parties participated in their second full-day mediation session with Judge Thornton. Although the Parties made additional progress, at the conclusion of the second mediation, the Parties still had not reached a resolution. At that time, Judge Thornton presented the Parties with a mediator's proposal for a settlement. Both Parties accepted Judge Thornton's proposal to settle the Action for a non-reversionary common fund of $2,400,000.00, subject to executing formal settlement documents and the Court's approval of the Settlement.

Thereafter, the Parties negotiating the specific settlement terms and memorialized those terms in a formal settlement agreement. In addition, Class Counsel solicited bids and selected a proposed settlement administrator, established a detailed notice program, drafted the proposed class notices and claim forms, and prepared a motion for preliminary approval of the Settlement. On October 24, 2022, the Settlement Agreement was finalized and submitted to the Court, along with the motion for preliminary approval. *See* ECF Nos. 22–24.

On November 17, 2022, the Court entered an Order preliminarily approving the Settlement and finding, subject to the Final Approval Hearing, that the Settlement reached is "fair, reasonable, adequate, and in the best interests of the Settlement Class." *See* Order Granting Preliminary Approval of Class Action Settlement and Approving Notice Program (ECF No. 25). Additionally, the Court appointed Federman & Sherwood and Murphy Law Firm as Class Counsel and appointed Plaintiffs as Class Representatives. *See* Preliminary Approval Order, ¶ 7.

Class Counsel now respectfully submit that the Settlement warrants Final Approval, in accordance with the Court's Preliminary Approval Order.

### III.    SETTLEMENT TERMS AND BENEFITS

#### A.  Settlement Class

The Court's Preliminary Approval Order preliminarily certified, for settlement purposes only, a Class defined as follows:

> All individuals who were sent notification by Ibex that their personal information was or may have been compromised in the Data Incident.

Preliminary Approval Order, ¶ 3.

Excluded from the Settlement Class are the judges presiding over this action, their families, and those Settlement Class Members who request exclusion from the settlement. *Id.*, ¶ 4.

#### B.  The Settlement Terms and Benefits of the Settlement Agreement

The Settlement is an outstanding result for the Settlement Class which provides both monetary and non-monetary relief. SA, ¶¶ 53, 55, 58–59. These Settlement benefits could not have been obtained without this litigation.

#### 1.  The Non-Reversionary Settlement Fund

Pursuant to the Settlement Agreement, Ibex has established a substantial non-reversionary Settlement Fund of $2,400,00.00. The Settlement Fund will be used to pay Approved Claims, notice and administration costs, attorneys' fees and expenses, service awards, and applicable taxes as approved by the Court. SA, ¶¶ 47–48, 51, 93, 95. Any amounts remaining in the Settlement Fund after funds are paid from, or allocated for, payment of the foregoing will be used to issue pro rata cash payments to all Settlement Class Members who submitted a valid claim, with such Residual Cash Payments to be capped at $95.00 per Class Member. SA, ¶¶ 35, 69(d). Any amounts remaining in the Settlement Fund after all Residual Cash Payments are made will be distributed to the Non-profit Residual Recipient, National Cybersecurity Alliance. SA, ¶ 51.

### 2. Identity Theft Protection and Credit Monitoring Package

All Settlement Class Members are automatically eligible to receive five (5) years of the three-bureau Credit Monitoring and Identity Theft Protection Services. SA, ¶ 58. To receive the Identity Theft Protection and Credit Monitoring Services, a Settlement Class Member need only complete a simple enrollment form. SA, ¶ 58. The Identity Theft Protection and Credit Monitoring package will also provide Settlement Class Members with extensive credit monitoring and privacy protection, Identity Protection Services, Identity Restoration Services, and $1,000,000 in Identity Theft Insurance. SA, ¶ 58. The retail price of an Experian package that includes each of these levels of protection is $24.99 per month.[3] Accordingly, this Settlement category alone provides a benefit worth approximately $1,499.40 to each Settlement Class Member. The Settlement Fund fully funds the cost of the Credit Monitoring and Identity Theft Protection Services Package. SA, ¶ 68.[4]

### 3. Reimbursement for Lost Time

In addition to the Credit Monitoring and Identity Theft Protection Services, Settlement Class Members are also eligible to receive a reimbursement for Lost Time. *See* SA, ¶ 55. Class Members can receive this reimbursement by simply providing the number of hours they spent in response to the Data Incident and a brief description of the actions taken. SA, ¶ 55, Exhibits 3–4. Reimbursements for Lost Time will be paid at a rate of twenty-five dollars ($25.00) per hour for up to five (5) hours, for a maximum payment of $125.00 per individual. SA, ¶ 55. A claim for reimbursement for Lost Time may be combined with a claim for Credit Monitoring and Identity

---

[3] *See* https://www.experian.com/consumer-products/compare-identity-theft-products.html.

[4] Because, the Settlement will provide services to a large number of individuals, the Parties have negotiated with Experian to receive discounted bulk pricing for the Credit Monitoring and Identity Theft Protection Services to reduce the cost from the Settlement Fund.

Theft Protection Services, Out-of-Pocket Losses, and Cash Payments for Identity Theft or Data Misuse.

### 4. Reimbursement for Out-of-Pocket Losses

Settlement Class Members may submit a claim for reimbursement for Out-of-Pocket Losses, not to exceed $5,000.00. SA, ¶ 53. In order to receive reimbursement for Out-of-Pocket Losses, Settlement Class Members must submit a valid Claim Form, including documentation supporting the loss and a brief description of the documentation describing the nature of the loss, if the nature of the loss is not apparent from the documentation alone. SA, ¶ 53. A claim for reimbursement for Lost Time may be combined with a claim for Credit Monitoring and Identity Theft Protection Services, Lost Time, and Cash Payments for Identity Theft or Data Misuse. However, a Settlement Class Member can only receive up to cash payments of up to $5,000.00, which does not include the costs for Credit Monitoring and Identity Theft Protection Services. SA, ¶53.

### 5. Cash Payments for Identity Theft or Data Misuse

Settlement Class Members are also eligible to receive a Cash Payment for Identity Theft or Data Misuse of $100.00. SA, ¶ 59.  To receive the Cash Payment for Identity Theft or Data Misuse, Settlement Class Members need only submit a valid Claim Form that includes documentation demonstrating the Settlement Class Member experienced actual or attempted identity theft or other verifiable misuse, including receiving fraud alerts or alerts of information being on the dark web. SA, ¶ 59. An individual may submit a Claim Form for a Cash Payment for Identity Theft or Data Misuse along with any other Settlement benefit as long as the aggregate cash payment does not exceed $5,000.00 per Claimant. SA, ¶ 59.

### 6. Confirmatory Discovery

Following the Court's entry of the Preliminary Approval Order, Ibex provided confidential confirmatory discovery to Class Counsel to demonstrate data security improvements that Ibex has undertaken in the aftermath of the Data Incident. SA, ¶ 71. The confirmatory discovery included: (1) documents demonstrating Ibex's security posture prior to the Data Incident and as it exists now, including policies, procedures and training materials; (2) correspondence with states' attorneys' general regarding the Data Incident and Ibex's response thereto; (3) documents sufficient to reasonably show that Settlement Class Members' personal information is no longer in the possession of any third party and has been deleted; and (4) documents showing the remedial measures taken by Ibex in response to the Data Incident. These confirmatory documents reasonably confirmed that Ibex has implemented meaningful enhancements to its security posture to assist in protecting Settlement Class Members' personal information from further unlawful intrusions. SA, ¶ 71.

### 7. Notice, Claims Process, and Settlement Administration

The Notice program was structured to fulfill all due process requirements while remaining simple and straight-forward. Federman Decl., ¶ 9.

Within fourteen (14) days after the entry of the Preliminary Approval Order, Ibex provided the Settlement Class List to the Settlement Administrator. Federman Decl., ¶ 10. After this, the Settlement Administrator sent each Settlement Class Member the Postcard Notice and the Postcard Claim Form within thirty (30) days of the Preliminary Approval Order. SA, ¶ 74; Federman Decl., ¶ 11. Settlement Class Members were able to submit Claim Forms via the claims website or by mail. SA, ¶ 66; Federman Decl., ¶ 12. Returned or undeliverable mailings were subject to skip tracing to determine if an alternative address was available. SA, ¶ 76; Federman Decl., ¶ 11.

The Notice sent to Settlement Class Members also advised them of their right to exclude themselves from the Settlement or Object to the Settlement. *See* SA, at Exhibits 1–2; Federman Decl., ¶ 13. Settlement Class Members were given sixty (60) days to request exclusion from the settlement or object (February 17, 2023). SA, ¶¶ 77–78. No requests for exclusion and no objections were submitted, which confirms that the Settlement was positively received by the Settlement Class. Federman Decl., ¶ 14.

Payments for Approved claims will be issued via check as soon as practicable following the Effective Date. SA, ¶ 61. In the event the Settlement Fund is exceeded, payments to eligible Settlement Class Members will be reduced on a pro-rata basis. SA, ¶ 69.

### 8. Attorneys' Fees, Expenses, and Service Awards

As discussed in Plaintiffs' Unopposed Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards to Plaintiffs (ECF No. 27) and the accompanying Memorandum of Points and Authorities (ECF No. 28) (collectively, "Plaintiffs' Fee Motion"), the Settlement Agreement permitted Class Counsel to seek an award of attorney's fees up to 30% of the Settlement Fund and $30,000.00 in litigation expenses. SA, ¶ 95. However, Class Counsel only sought attorneys' fees of 28% of the Settlement Fund, and reimbursement of litigation expenses in the amount of $10,039.44. *See* Plaintiffs' Fee Motion.

Pursuant to the Settlement Agreement, Class Counsel also requested Service Awards of $4,000.00 for each of the three Class Representatives for the effort and time they devoted on behalf of the Class. SA, ¶ 93; *see also* Plaintiffs' Fee Motion.

## IV.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

The Settlement is the result of months of investigation, the exchange of documents and other informal discovery, and extensive arm's length negotiations among the Parties with the assistance of experienced mediator Judge Thornton (Ret.). The Settlement provides valuable

benefits and monetary compensation to Class Members as well as five years of premier Credit Monitoring and Identity Theft Protection Services. The Settlement compares very favorably to other data breach settlements. Having weighed the immediate benefits of the Settlement against the inherent risks and delays of continued litigation, Plaintiffs and Class Counsel strongly believe that the proposed settlement is "fair, reasonable, and adequate" and merits final approval. Fed. R. Civ. P. 23(e)(2).

### A. Legal Standards for Approval

Approval of the Settlement "lies within the discretion of this Court." *In re Vitamins Antitrust Litig.,* 305 F. Supp. 2d 100, 103 (D.D.C. 2004). Courts in this Circuit favor the settlement of class action litigation. *See id.* (expressing a "principle of preference" favoring and encouraging settlements); *see also Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993) (emphasizing that policy of encouraging settlements is particularly appropriate in class actions, which are often complex, protracted, and demanding of limited judicial resources); *Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 51 (D.D.C. 2010) ("[T]here is a long-standing judicial attitude favoring class action settlements, and the court's "discretion is constrained by the 'principle of preference' favoring and encouraging settlement in appropriate cases.") (citation omitted); Herbert B. Newberg, *Newberg on Class Actions* ("Newberg") § 13.44 (5th ed. 2020) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals . . . . This preference for settlement underscores the presumption, discussed in the succeeding section, that courts will presume a proposed settlement to be fair in the presence of certain factors.").

Prior to the 2018 amendment to the Federal Rules of Civil Procedure, the D.C. Circuit considered the following criteria to evaluate if a settlement was "fair, reasonable, and adequate" (the "Supplemental Factors"): (i) whether the Settlement resulted from arm's-length negotiations;

(ii) terms of the settlement in relation to the strength of Plaintiffs' case; (iii) stage of the litigation at the time of settlement; (iv) reaction of the Class; and (v) opinion of experienced counsel. *Hardy v. District of Columbia*, 49 F. Supp. 3d 48, 49–50 (D.D.C. 2014); *Stephens v. U.S. Airways Group, Inc.*, 102 F. Supp. 3d 222, 326 (D.D.C. 2015) (citing *In re Living Social Marketing and Sales Practice Litigation*, 298 F.R.D. 1, 11 (D.D.C. 2013); *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.,* 565 F. Supp. 2d 49, 55 (D.D.C. 2008).

However, with the 2018 Amendment to the Federal Rules of Civil Procedure, Rule 23(e) includes a list of factors for courts to consider in determining whether a proposed class settlement is "fair, reasonable, and adequate." The Rule 23(e)(2) factors are:

> whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P 23(e)(2).[5]

Plaintiffs address both sets of factors below to demonstrate that the Settlement warrants final approval under all relevant standards.

### B. Rule 23(e) and the Supplemental Factors Weigh in Favor of Granting Final Approval

#### 1. Rule 23(e)(2)(A): Class Representatives and Class Counsel Adequately Represented the Class

"Two criteria for determining the adequacy of representation are generally recognized: (1) the named representative must not have antagonistic or competing interests with the unnamed

---

[5] The first two prongs address the "procedural fairness" of a settlement, while the last two prongs address the "substantive fairness." Fed. R. Civ. P. 23 Advisory Committee Note (2018).

members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C.Cir.1997) (internal quotation omitted).

This Court appointed Federman & Sherwood and Murphy Law Firm as Class Counsel after finding "Class Counsel is well-qualified and experienced." Preliminary Approval Order, ¶ 7. Class Counsel were instrumental in researching the case, developing the factual background and claims, and ultimately settling the case. *See, e.g.,* Federman Decl., ¶ 8. There is no question Class Counsel adequately represented the Class.

Further, the Class Representatives in this case do not have interests antagonistic from other Settlement Class Members. Each Class Representative was impacted by the Data Incident and experienced harm as a result. Pls' Compl., ¶¶ 10–29. Class Representatives also worked diligently to review relevant documents and filings, provide Class Counsel with documents related to the Data Incident and their resulting experiences, participate in settlement negotiations, and otherwise assist in the prosecution of this litigation. *See* ECF No. 28-1, ¶ 23. Their participation, coupled with the experience of their counsel, ensured adequate representation of the Settlement Class.

### 2. Rule 23(e)(2)(B) and Supplemental Factor 1: The Settlement Was Negotiated at Arm's-Length

"A presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Meijer,* 565 F. Supp. 2d at 49 (D.D.C. 2008) (quoting *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 104).

Here, the Parties' negotiations were hard-fought, extensive, included multiple exchanges of information, involved two full-day mediation sessions with both session going well into the evening hours, and even then the Parties were unable to reach agreement, requiring Judge Thornton

to present the Parties with a mediator's proposal to bridge the divide. Federman Decl., ¶¶ 3–4. Plaintiffs' and Defendants' counsel, who are highly experienced and capable, vigorously advocated their clients' positions in the settlement negotiations. Federman Decl., ¶¶ 3–5, 7–8. As a result of Class Counsel's research and the Parties' exchange of informal discovery prior to mediation, Class Counsel were well-informed of the facts and issues concerning liability, damages, and the relative strengths and weaknesses of each side's litigation position. Federman Decl., ¶ 4. Moreover, Class Counsel have years of experience litigating complex class actions, particularly data breach class actions, and have negotiated settlements in a wide range of cases. Federman Decl., ¶ 7. Given the evidence adduced prior to mediation, Class Counsel used their specific case knowledge and their experience in other cases to negotiate meaningful benefits on behalf of the Settlement Class. In light of the non-collusive nature and procedural fairness of the Settlement, the presumption of fairness, adequacy, and reasonableness should therefore attach.

### 3. Rule 23(e)(2)(C–D): The Relief Provided for the Class is Adequate and Class Members are Treated Equitably

Rule 23(e)(2)(C) considers whether the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

The Settlement Agreement provides outstanding relief for Settlement Class Members. Defendants agreed to create a non-reversionary Settlement Fund of $2,400,000.00 from which significant benefits will be provided to Settlement Class Members, including reimbursements of up to $5,000.00 in Out-of-Pocket Losses, reimbursements of up to $125.00 in Lost Time, Cash Payments for Identity Theft or Data Misuse in the amount of $100.00, and five (5) years of Credit

Monitoring and Identity Theft Protection Services offered by Experian. SA, ¶¶ 47, 53, 55, 58, 59; Federman Decl., ¶ 2. In the event the payment of all claims would exceed the Settlement Fund, the claims will be subject to pro rata distribution. SA. ¶ 69; Federman Decl., ¶ 2. On the other hand, in the event that funds remain in the Settlement Fund after the payment of all claims and costs, additional pro rata cash payments will be made to all Settlement Class Members who submitted a valid claim, with such Residual Cash Payments to be capped at $95.00 per Class Member. While the claims period is ongoing, all indications based on the early claims data are that the Settlement Fund will be able to provide full benefits to valid claimants and will even have sufficient funds to distribute Residual Cash Payments. *See* Declaration of Ryan Aldridge Regarding Status Notice and Settlement Administration ("Aldridge Decl."), attached as Exhibit 1 to the Federman Decl.

These Settlement benefits compare very favorably to those of other data breach class action settlements approved by courts.  *See, e.g., Baksh et al. v. IvyRehab Network, Inc*., No. 7:20-CV-01845 (S.D.N.Y. Jan. 27, 2021) (ECF No. 49) (approving data breach settlement with common fund of only $150,000 for a class of 121,160 members and providing claimants with up to $75 in out-of-pocket expense reimbursement, $20 for lost time, 1 year of credit monitoring); *Sackin v. TransPerfect Global, Inc*., No. 1:17-cv-01469-LGS (S.D.N.Y. Dec. 14, 2018) (ECF Nos. 63, 74) (approving settlement providing only 3 years of identity theft protection and reimbursement of out-of-pocket expenses); *In re: Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-cv-01035-WMR (N.D. Ga.) (ECF Nos. 187-1, 190) (approving settlement that provided only reimbursements for out-of-pocket losses and time spent); *In re Zappos.com, Inc. Sec. Breach Litig.*, No. 3:12-cv-00325 (D. Nev.) (ECF No. 418 at 2) (data breach settlement provided "10% coupon" for Zappos goods); *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 979 (8th Cir. 2018) (affirming approval of settlement that established a common fund of $10 million for 100 million class members where the benefits provided were reimbursement for documented losses and pro rata

distribution of residual funds). The monetary and non-monetary relief provided by this Settlement are significant and certainly adequate to release Settlement Class Members' claims related to the Data Incident. Federman Decl., ¶ 2.

On the other hand, the risks of proceeding to trial were substantial. Defendants would vigorously contest the merits of the claims through motion practice and would resist class certification. A defeat on a dispositive motion or a failure to obtain class certification would deprive class members of any recovery. In addition, as numerous courts have noted, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Brent v. Midland Funding, LLC*, No. 3:11-CV-1332, 2011 WL 3862363, at *16 (N.D. Ohio Sept. 1, 2011) (quoting *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). Thus, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.* (quoting 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.50 (4th ed. 2002). Accordingly, courts have consistently held that "[t]he expense and possible duration of the litigation [should] be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *see also Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 340 (W.D. Pa. 1997) ("[I]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.") (citations omitted). Here, the risks and delays of complex litigation, coupled with the benefits of the Settlement, all favor final approval. Federman Decl., ¶¶ 2, 5.

The proposed Settlement Fund distribution is also fair, adequate and reasonable. Pursuant to the Settlement Agreement, a Settlement Class Member may easily make a claim by submitting a claim form either by mail or electronically on the Settlement Website. SA, ¶ 66. The Settlement also treats Class members equitably relative to one another. All Class members are eligible to

receive 5 years of credit monitoring and identity theft protection, reimbursement for time spent, reimbursement for out-of-pocket expenses or losses, and additional cash payment for identity theft or data misuse. SA, ¶¶ 53, 55, 58–59. There are no flaws in the settlement or distribution plan, and no segment of the proposed settlement class is unduly favored over any other. *See Howard v. Liquidity Servs. Inc.,* No. CV 14-1183 (BAH), 2018 WL 4853898, at *7 (D.D.C. Oct. 5, 2018) (finding that distribution of settlement fund is fair and reasonable where "there is 'a rough correlation' between the settlement distribution and the relative amounts of damages recoverable by [c]lass [m]embers") (citations omitted).

Finally, there are no agreements, other than the Settlement Agreement, required to be identified under Rule 23(e)(2)(C)(iv) and Rule 23(e).

### 4.   The Remaining Supplemental Factors Support Final Approval

#### a.   *Supplemental Factor 2: Terms of the Settlement Compared to the Strength Case*

While Plaintiffs are confident that their case against Defendants has merit, there are still many hurdles to overcome in a case of this size and scope. Class certification, *Daubert* motions, summary judgment, trial, and appeals could all potentially impede Plaintiffs' ability to secure a recovery for the Settlement Class. Federman Decl., ¶ 5. Defendants undoubtedly would have fought Plaintiffs at every procedural turn as well as on the merits. To prevail, Plaintiffs would have to establish that Defendants were negligent in maintaining adequate data security measures, which would involve a battle of the experts offering competing opinions on highly complex technical issues surrounding the security of computer databases and cyberattacks. *See, e.g., In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount of Plaintiffs' losses.").  Further, while courts have granted class

certification of data breach class actions in the past, others have declined to do so, highlighting the risks of continued litigation. *See, e.g., Dolmage v. Combined Ins. Co. of Am.*, No. 14 C 3809, 2017 WL 1754772, at *9 (N.D. Ill. May 3, 2017) (denying certification of data breach class action because, *inter alia*, case "will require individualized damages inquiries for each class member").

The Settlement avoids the risks of continued litigation, and courts weigh this consideration in favor of final approval. Federman Decl., ¶ 5; *see, e.g., Vista Healthplan, Inc. v. Warner Holdings Co. III*, 246 F.R.D. 349, 362 (D.D.C. 2007) ("It is obvious that Plaintiffs faced significant risks in establishing both liability and damages and in continuing to trial, and that the fairness, adequacy, and reasonableness of the settlement must be viewed in light of these considerations."); *see also In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *4 (D.D.C. June 16, 2003) (weighing risks and costs of continued litigation, which "operate to reduce the total potentially recoverable damages in this case," in favor of settlement).

In light of the significant benefits made available to the Settlement Class (discussed *supra* at Section III.B and IV.B.3) while avoiding the delay or uncertainty of protracted litigation, this factor weighs in favor of final approval.

### b. *Supplemental Factor 3: Stage of Litigation at the Time of Settlement*

In determining whether a proposed class action settlement is fair, adequate, and reasonable, "courts consider whether counsel had sufficient information" to reasonably assess "the probability of success and range of recovery." *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 117 (D.D.C. 2007).

Here, Class Counsel had more than sufficient information to evaluate the merits of their claims against Defendants and to evaluate the adequacy and fairness of the ultimate Settlement Agreement reached by the parties. Settlement Class Counsel's pre-settlement investigation, research, pre-mediation submissions, informal discovery, and lengthy mediation sessions were

robust. Class Counsel had a well-founded basis upon which to negotiate this Settlement. *See Trombley v. Nat'l. City Bank*, 826 F. Supp. 2d 179, 200 (D.D.C. 2011) (arm's length negotiations, pre-settlement discovery, and informal investigation sufficient to establish that settlement was fair, adequate, and reasonable for purposes of final approval). This Court has repeatedly held that swift settlements without formal discovery are appropriate and merit approval. *See id.* ("[F]ormal discovery is not a prerequisite, even for final approval purposes."); *In re Vitamins Antitrust Litig.*, No. 99-197, 1999 WL 1335318, at *4 (D.D.C. Nov. 23, 1999) ("The pursuit of early settlement is a tactic that merits encouragement; it is entirely appropriate to reward expeditious and efficient resolution of disputes") (internal citations omitted); *In re Lorazepam Antitrust Litig.*, 205 F.R.D. 369, 377 (D.D.C. Feb. 1, 2002) ("early settlement of these types of cases is encouraged.").

Moreover, as part of the Settlement, Ibex produced numerous relevant documents as part of the Settlement's confirmatory discovery. Federman Decl., ¶ 8. Based on Class Counsel's review and consideration of these documents, it is the opinion of Class Counsel that the Settlement is fair, reasonable, and adequate and is in the best interests of the Class. *Id.*

This factor weighs in favor of final approval.

### c. Supplemental Factor 4: Reaction of the Class

The next factor considers the reaction of the Settlement Class. *Thomas v. Albright*, 139 F.3d 227, 231–33 (D.C. Cir. 1998). Here, the overwhelmingly positive reaction of the Class Members strongly supports final approval.

Here, the Settlement Class's initial reaction to the Settlement is very positive and strongly supports final approval. The claims deadline is March 20, 2023. As of February 23, 2023, a total of 3,555 claims have already been received from Settlement Class Members. *See* Aldridge Decl., ¶ 18. This amounts to a claims rate of 2.0% of Settlement Class Members, with this rate expected to grow before the March 20, 2023 claims submission deadline, particularly given that reminder

notices were mailed to Settlement Class Members this week (*id.,* ¶ 12). The claims rate of 2.0% nearly a month before the deadline compares favorably to the claims rates in other data breach class action settlements. *See, e.g.,  In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-CV-8472 (PKC), 2022 WL 2063864, at *10 (S.D.N.Y. June 8, 2022) (approving data breach class settlement where the "number of claims submitted reflects a response rate of approximately 0.25%"); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (finding that a 1.8% claims rate reflects a positive reaction by the class);  *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-md-2522, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017), *aff'd*, 892 F.3d 968 (8th Cir. 2018) (approving settlement with a claims rate of roughly 0.23 percent); *In re Wawa, Inc. Data Sec. Litig.*, No. CV 19-6019, 2022 WL 1173179, at *5 (E.D. Pa. Apr. 20, 2022) (finding that claims rate in "the range of 0.035 percent (without the expansion) to 2.6 percent (with the expansion) actually compares favorably with other data breach settlements").

The deadline for objections and requests for exclusions passed on February 17, 2023. *See* Aldridge Decl., ¶¶ 19-20. Significantly, *no* objections and *no* requests for exclusion were submitted. *Id.* The absence of any objections or requests for exclusion is a strong sign that the Settlement Class Members supports the Settlement. Federman Decl. ¶ 14; *see Osher v. SCA Realty I, Inc*., 945 F. Supp. 298, 305 (D.D.C. 1996) ("[T]he Court concludes that the reaction of the Class members is overwhelmingly in favor of the proposed settlement. Only 30 Class members have requested to be excluded from the Settlement Class out of the approximately 14,000 Class members given Notice of the proposed settlement. Furthermore, only one objection to the proposed settlement has been received by Class and Derivative Counsel."); *Luevano v. Campbell*, 93 F.R.D. 68, 91 (D.D.C. 1981) ("The fact that only one-sixth of one percent of the class has chosen to object to the settlement is an important indication of its fairness and adequacy.").

The extremely favorable reaction of the Class strongly supports final approval of the Settlement.

### d. Supplemental Factor 5: Opinion of Experienced Counsel

Lastly, "[t]he opinion of experienced counsel should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *Radosti*, 717 F. Supp. 2d at 56.

Class Counsel in these matters have extensive experience litigating and resolving complex class actions. Federman Decl., ¶¶ 7–8. Class Counsel strongly believe that the Settlement is fair, adequate, and reasonable for the reasons set forth, *supra*. The Court should give credence to Class Counsel's opinion.

All settlement negotiations were undertaken in good faith by Class Counsel. Federman Decl., ¶¶ 3–4. Nothing in the course of the negotiations or the substance of the Settlement "discloses grounds to doubt its fairness." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 104 (citing Manual for Complex Litig. § 30.41 (3d ed.)); *see also Meijer*, 565 F. Supp. 2d at 55 ("The Court has been presented with absolutely no evidence that the settlement is anything other than the product of arm's-length negotiation between experienced counsel."). To the contrary, the arm's length nature of the negotiations, the relevant information gathered, the protracted nature of these negotiations, and the involvement of experienced advocates and a well-respected mediator throughout the process all support the conclusion that the proposed Settlement is fair, reasonable, and adequate, and should be approved.

\*       \*       \*

All five Supplemental Factors and all 23(e) Factors weigh in favor of final approval. Accordingly, Class Counsel respectfully maintain that the Court should grant final approval of the proposed Settlement.

## V.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

In the Preliminary Approval Order, the Court preliminarily certified the Settlement Class, finding that the required Rule 23(a) elements were met. ECF No. 25. At the final approval stage, the Court's preliminary conclusions remain appropriate.

The Settlement Class still meets the requirements of Rule 23(a).  Numerosity is satisfied here because Defendants' records indicate that there are 177,463 Settlement Class Members. Commonality is met because there are numerous issues of fact and law common to the Settlement Class, including, *inter alia*, whether: (a) Defendants had a duty to safeguard the Settlement Class Members' PII; (b) Defendants were negligent in maintaining adequate data security protocols; and (c) the Settlement Class Members were injured by having their PII potentially accessed by unauthorized parties while on Defendants' systems. *See In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508, at *8 (M.D. Fla. Apr. 14, 2021) (finding these issues common to the class).  Typicality is satisfied because "each class member's claim arises from the same event or practice" — the Data Incident — and it "gives rise to a claim of another class member's where his or her claims is based on the same legal theory." *Hardy*, 283 F.R.D. at 25 (citation omitted). Likewise, adequacy is met because (1) Plaintiffs possess the same interests as the proposed Settlement Class Members given that all were allegedly injured in the same manner based on the same allegedly inadequate security measures and the same Data Incident, and (2) Class Counsel are qualified, experienced, and have adequately conducted the litigation. *See Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997).

The Settlement still meets the requirements of Rule 23(b).  Common questions predominate here, including questions of whether: (a) Defendants had a duty to safeguard the Settlement Class Members' PII; (b) Defendants were negligent in maintaining adequate data security protocols; and (c) the Settlement Class Members were injured by having their PII potentially accessed by

unauthorized individuals as a result of the same Data Incident. Finally, class certification is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the over 177,000 Settlement Class Members who would otherwise need to provide nearly the same, if not identical, legal and factual arguments and evidence.

Accordingly, final certification of the Settlement Class is appropriate.

## VI.    THE NOTICE ADEQUATELY APPRISED CLASS MEMBERS

As the Court preliminarily found, the Notice to the Settlement Class satisfies the requirements of Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Here, the Settlement Administrator employed direct notice, sending the Postcard Notice and Postcard Claim Form to Settlement Class Members directly via U.S. mail or email. SA, ¶¶ 74–75; Federman Decl., ¶ 11. Through these means, the Settlement Administrator was able to successfully provide direct notice to 154,269 (86.9%) of Settlement Class Members. Aldridge Decl., ¶ 17. Further, the Settlement Administrator established a publicly accessible Settlement Website to which Class Members may refer for information about the Settlement and submit online Claim Forms. Aldridge Decl., ¶ 14; SA, ¶¶ 66, 74; Federman Decl., ¶ 12. The Settlement Administrator posted the Notices, Claim Form, Settlement Agreement, motions filed by Class Counsel, the date of the Fairness Hearing, information about objecting to the Settlement, and exclusion information on the website. Aldridge Decl., ¶14; Federman Decl., ¶ 13.[6] In addition, the Settlement Administrator has maintained a telephonic help line and a support email account.

---

[6] *See* https://www.ibexdatasettlement.com/court-documents/.

Aldridge Decl., ¶¶ 15–16. As such, the Settlement Class has been kept well-informed of the details of the Settlement and their options.

Additionally, the Notices sent to the Settlement Class were plain and easily understood. *See* Aldridge Decl. at Exhibit B–C; Federman Decl., ¶ 9. The Notices described the claims, the relief provided under the Settlement, and Settlement Class Members' rights and options, including the deadlines and means of submitting a Claim Form, objecting, requesting exclusion, and/or appearing at the Final Approval Hearing. *Id*.

Plaintiffs submit that the Notice Program issued pursuant to the Settlement meets the requirements of due process and the Federal Rules of Civil Procedure, supporting final approval.

## VII.    CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court grant their motion for final approval and enter an order substantially similar to the proposed Order for Final Judgment, filed contemporaneously herewith.

Date: February 24, 2023                           Respectfully Submitted,


                                        */s/ A. Brooke Murphy*
                                        A. Brooke Murphy
                                        **MURPHY LAW FIRM**
                                        4116 Will Rogers Pkwy, Suite 700
                                        Oklahoma City, OK 73108
                                        Telephone: (405) 389-4989
                                        abm@murphylegalfirm.com

                                        William B. Federman
                                        **FEDERMAN & SHERWOOD**
                                        10205 N. Pennsylvania Ave.
                                        Oklahoma City, OK 73120
                                        Telephone: (405) 235-1560
                                        wbf@federmanlaw.com

                                        *Class Counsel*

23

David K. Lietz
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877
dlietz@milberg.com

*Liaison Counsel*